

# THE ATTORNEY GENERAL
## OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN, TEXAS

March 3, 1947

Hon. Arthur B. Knickerbocker
Adjutant General of Texas
Austin, Texas      Opinion No. V-60

Re: Authority of the Adjutant General to cause to be offered for sale buildings and/or equipment received from the United States Government in lieu of restoration of damages to leased property, and to use the proceeds of such sale to accomplish the physical restoration of property damaged while under lease to the United States Government

Dear Sir:

Reference is made to your letter addressed to the Attorney General under date of January 9, 1947, concerning the following questions:

"(a) Does the Adjutant General have the authority to cause to be offered for sale, in the manner prescribed by law, such buildings, installations and equipment received from the Federal Government in lieu of restoration of damages to leased property, as are not required for use by the State, in a value comparable to the estimated cost of the repair and/or restoration of the buildings and installations which are to be retained for the use of the State?"

"(b) If the answer to (a) above is in the affirmative, may the proceeds of such sales be deposited with the Treasurer of the State of Texas, to be expended for the repair, restoration and improvement of Camp Hulen, Camp Wolters and Camp Mabry, with the object of placing these camps in such condition as to be best useable for the purposes of the State, in connection with the administration and training of the Texas National Guard?"

We will consider the questions in the order presented by your letter.

It is settled as the law of this State that "public officers and governmental and administrative boards possess only such powers as are expressly conferred upon them by law or necessarily implied from the powers so conferred." 34 Tex. Jur., Section 67, Page 440.

Further, "statutes which prescribe and limit the exercise of official duty are strictly construed in respect to the powers conferred and the manner of their exercise, and such powers are not to be enlarged by construction." 34 Tex. Jur., Section 68, page 443.

"It is equally well settled, however, that a law which confers a power or imposes a duty upon an officer or board carries with it by implication the authority to do such things as are reasonably necessary to carry into effect the power granted or the duty imposed." 34 Tex. Jur., Section 68, Page 444.

"The office of the Adjutant General is a creature of the law. The duties and powers of the person holding such office are also defined by law." Fort Worth Cavalry Club, Inc. v. Sheppard, Comptroller, 83 S. W. (2) 660,666.

A review of Articles 5787, 5788, 5790, 5791, 5792, 5793, 5794 and 5798, Vernon's Annotated Civil Statutes, indicates same are pertinent in determining the powers expressly conferred upon the Adjutant General by statute. We deem it unnecessary, and in the interest of brevity, we will not quote all of the above referred to articles. However, the first paragraph of Article 5790 is especially important in determining the question at hand, and we quote therefrom:

"The Adjutant General shall be in control of the military department of this State, and subordinate only to the Governor in matters pertaining to said Department, or the military forces of this State; and he shall perform such duties as the Governor may from time to time entrust to him, relative to the military commissions, the military forces, the military stores and supplies, or to other matters respecting military affairs of this State; and he shall conduct the business of the Department in such manner as the Governor shall direct.

<u>He shall have the custody and charge of all books,
records, papers, furniture, fixtures and other prop-
erty relating to his Department</u>, and shall perform
as near as practicable, such duties as pertain to
the Chief of Staff, the Military Secretary and other
Chiefs of Staff Departments, under the regulations
and customs of the United States Army." (Emphasis
supplied)

A careful study of the articles just referred
to fails to reveal any express language contained there-
in, authorizing the Adjutant General to sell property.
By the terms of the statute, the Adjutant General's ex-
pressed powers and duties with respect to property are
limited to "<u>custody and charge</u>."

Further, construction of the above statutes,
together with departmental Appropriation Act (Acts 1925,
49th Leg. Ch. 378, p. 810) leads to no logical deduction
that the Adjutant General has implied powers, within the
reasonable limitations of such Appropriation Act, to sell
property belonging to the State, which will not be re-
quired for use by the State.

We conclude, therefore, that the Adjutant Gen-
eral has neither express nor implied power to sell any
property belonging to the State which shall not be re-
quired for use by the Adjutant General's Department.

Article 666, Vernon's Annotated Civil Statutes,
1925, provides for the disposition of all State property,
when it shall become unfit for use or shall be no longer
needed by any State department. We quote this article:

"All property belonging to the state, re-
gardless of where it is located, under the control
of any department, commission, board or other
state agency, with the exception of state eleemos-
ynary institutions, colleges, and institutions of
higher learning, when it shall become unfit for
use, or shall be no longer needed, shall be
placed under the jurisdiction of the Board of
Control, and the Board of Control shall sell such
property after advertising it not less than four
(4) days in a newspaper in the county wherein the
property is situated. Provided, however, that if
no newspaper is published in the county wherein
the property is situated, notice of said sale
setting out the time and place of sale and the
property to be sold shall be posted in three (3)

public places, one being in the court house in the
county wherein the property is situated. Provided,
however, that if the value of such personal prop-
erty is less than One Hundred ($100.00) Dollars and
not sufficient to justify the cost of advertisement
in newspapers as outlined above, the Board of
Control may sell such property in any manner
that it deems for the best interest of the state.
The money from the sale of such property, less the
expense of advertising the sale, shall be deposited
in the State Treasury to the credit of the General
Revenue Fund. And provided further, that any prop-
erty placed in the hands of the Board of Control,
as outlined herein, may be transferred by the Board
of Control to any department, commission, board or
state agency in need of same, and the debit and
credit shall be made on the basis that such prop-
erty can be purchased in the market at the time of
the transfer, if a market exists, and if not, at
its actual or intrinsic value as set by the Board
of Control. The Board of Control shall make a
written report to the Comptroller after each sale.
The report shall include the following items:

"1. Name of the newspaper and the dates of
advertisement of notice of sale; or if posted, the
date and place of posting.

"2. Each article received.

"3. The price for which each article was sold.

"4. The name and address of the person to
whom each article was sold.

"This report shall be signed by the Board of
Control and a member of the department, commission,
board or state agency having control of the property
before sale."

Generally speaking, the word or words "property"
or "all property" is "nomen generalissimum" and includes
both real and personal property. See: Words and Phrases,
Vol. 34, p. 405 to 408; Womack v. Womack, 172 S.W. (2)
307. Notwithstanding this general rule, it is our opin-
ion that the intent of the Legislature, which shall gov-
ern in the construction and interpretation of statutes,
was to make Article 666, supra, applicable only to per-
sonal property. The bases for this conclusion are three-
fold, to-wit:

(a)  The Legislature, in writing the Act, used the words, "provided, however, that if the value of such personal property is less than $100.00." Had the Legislature intended that the Article apply to real and personal property, and to make the $100.00 exception applicable to personal property, they would, in our opinion, have used the word "any".

(b)  In the second place, it appears that Article 666, supra, was intended to apply only to personal property, because the Legislature used the word "article" in prescribing the information to be included in the report of the Board of Control after sale. It is hardly logical to assume that the Legislature would have used the word "article" intending same to apply to real property.

(c)  A careful study of the statutes applicable to the Board of Control fails to reveal any express or implied authority on behalf of said Board to execute deeds of conveyance, transferring the title to real property. Title 20, Vernon's Annotated Civil Statutes, 1925.

It is our opinion, therefore, that under the provisions of Article 666, supra, the Adjutant General is authorized to place surplus personal property under the control of his department, under the jurisdiction of the Board of Control, for disposal or sale in accordance with the provisions of this article.

This brings us to the question of whether or not the examples of surplus buildings and equipment enumerated on Page 2 of your letter, above cited, shall be considered as real or personal property. It is our understanding that, under the terms of the lease with the Federal Government, any buildings erected by the Federal Government were to remain the property of the Government and could be removed by the Government at the expiration of the lease contract.

It is our opinion, however, that when this property is conveyed by the Federal Government to the State of Texas, it becomes the State's property for all purposes, and the agreement by which this property maintained its character as personalty is no longer effective. The question, therefore, of whether the property listed on page 2 of your letter is personalty or realty in the hands of the State must be determined by the general rule of law applicable to fixtures. "It is a general rule that

whatever is fixed to the realty thereby becomes a part
of the soil and partakes of all its incidents and prop-
erties." 23 Tex. Jur. p. 375. "According to a leading
decision, the true criterion for determining whether a
chattel has become an immovable fixture consists in the
united application of the following tests: First. Has
there been a real or constructive annexation of the ar-
ticle in question to the realty? Second. Was there a
fitness or adaptation of such article to the uses or
purposes of the realty with which it is connected? Third,
Was it the intention of the party making the annexation
that the chattel should become a permanent accession to
the freehold?" 19 Tex. Jur. p. 707.

In the instant case the intention of the Fed-
eral Government at the time the improvements were made
was that such improvements should remain personalty and
be subject to removal as long as they were owned by the
Federal Government. However, the transfer of these im-
provements to the State of Texas will effect a relin-
quishment of this contract right and since the State of
Texas will own both the land and the improvements, there
is no provision in law or an outstanding right in any
third party which will prevent the improvements, which
are in fact annexed to the realty, from becoming in law
a part of the land. The fact of being annexed has the
effect in law of making an improvement a part of the re-
alty, unless there is some agreement, expressed or im-
plied, between the owner of the realty and the owner of
the improvement which binds the parties to consider the
improvements as personal property. 19 Tex. Jur. p. 715,
36 C.J.S. p. 917. "The building is deemed to be person-
al property during the life of the lease and becomes
real estate upon the expiration or surrender thereof
without removal." 22 American Jur. p. 782. In Glasgow
v. John Hancock Mutual Life Insurance Company, 117 S.W.
(2) 888, at page 892, affirmed 141 S. W. (2) 942, the
Court of Civil Appeals said:

"Appellants also assign error on the action of
the trial court, in foreclosing the deed of trust
lien on the house and garage on lot seven (7)which,
according to the evidence and findings of the jury,
was the separate property of Mrs. Glasgow, placed
upon the land subsequent to the creation of the lien
indebtedness, and occupied by her as her home. It
is doubtful whether the evidence sustains the find-
ings of the jury; be that as it may, the improve-
ments were on the lot at the time the insurance com-
pany extended the deed of trust lien on the property;

the company had no knowledge of the existence of the wife's ownership of the improvements, separate and distinct from her community interest in the realty; she and her husband were living on the property, and the improvements were permanent fixtures thereon. The house and garage being permanent fixtures on the land, _merged_ into the realty, and became a part of it; therefore, the trial court correctly held that the improvements were subject to the lien indebtedness."

What is or is not personal property will depend in each instance on the physical fact of whether or not it is annexed to the realty. 36 C.J.S. 900. The Adjutant General has authority to declare the personal property surplus and by surplus is meant that property which is surplus to the needs of the department for carrying on the purposes for which such camp or camps were transferred to the State of Texas. The authority of the Adjutant General is limited to placing such surplus personal property under the jurisdiction of the Board of Control for disposal or sale in accordance with Art. 666, supra.

The improvements, which the Federal Government proposes to transfer to the State and which are annexed to the realty at Camp Hulen, Camp Wolters and Camp Mabry, will become by reason of such fact a part of the realty and can be disposed of only by the Legislature passing a law to that effect.

With regard to your question (b), above quoted, we think the language of Art. 666, supra, is too clear and unequivocal to admit of any other construction than that the proceeds realized from the sale of personal property under such statute shall be deposited with the State Treasurer to the credit of the General Revenue Fund. Our answer to this question, therefore, is in the negative.

### SUMMARY

1. The Adjutant General of Texas has authority to place under the jurisdiction of the Board of Control for disposal or sale, pursuant to Article 666, Vernon's Annotated Civil Statutes, surplus personal property at Camp Hulen, Camp Wolters and Camp Mabry, which has become unfit for use or is no longer needed for carrying on the purposes for which such camp or camps were transferred to the State of Texas. If such property is sold, the proceeds shall be deposited with the State Treasurer to the credit of the General Revenue Fund.

2. The Adjutant General of Texas does not have authority to declare real property as surplus and the Board of Control does not have authority to sell real property belonging to the State of Texas, under the authority of Art. 666, Vernon's Annotated Civil Statutes. The buildings, installations, equipment and other property, considered personal property, constructed by the Federal Government on Camp Hulen, Camp Wolters and Camp Mabry during the war, and which it is contemplated will be conveyed to the State, will become fixtures at that time, if they are annexed to land at the time of the transfer, and such improvements cannot then be sold without an Act of the Legislature to that effect.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____ Charles E. Pratt
Charles E. Pratt
Assistant


APPROVED MAR. 3, 1947

Price Daniel
ATTORNEY GENERAL

CEP:bt:jrb